UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| DONNY PHILLIPS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:05-CV-222-C |
| | § | ECF |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Donny Phillips applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) alleging that he was disabled and unable to work because of a number of impairments including diabetes mellitus. An Administrative Law Judge (ALJ) held a hearing, entered a decision finding Phillips not disabled, and the Appeals Council denied review. Phillips now seeks judicial review of the Commissioner's final decision denying benefits. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. After reviewing the administrative record and the arguments of both parties, this court recommends that the court affirm the Commissioner's decision.

**I.    Points of Error**

Phillips bring three points of error contending that: (1) the ALJ failed to properly evaluate his symptoms and assess his credibility as required under Social Security Ruling 96-

7p; (2) the ALJ failed to follow the regulatory mandates and controlling case law when he analyzed and rejected the opinions of treating physician Sudhir R. Gogu, Ph.D., D.O.; and (3) the ALJ failed to incorporate limitations associated with his diabetes into his residual functional capacity assessment.

In support of these contentions Phillips points to numerous notations in the record that his diabetes is uncontrolled and to his testimony that he experiences poor energy, frequent thirst, frequent urination, and that he must check his blood sugar and take insulin several times per day. He argues that the ALJ did not show good cause for rejecting opinions offered by Dr. Gogu. He complains that in addition to failing to consider the regulatory factors, the ALJ rejected Dr. Gogu's opinions on grounds that the treating records failed to show abnormal range of motion or reflexes. He argues that the ALJ's reasoning was not sound because measures of range of motion and reflex testing are unrelated to diabetes.

Phillips also contends that several cases from the Fifth Circuit Court of Appeals establish the court's willingness to review whether the claimant's diabetic condition is controlled with treatment and to determine whether the disease causes symptoms in the claimant that would result in limitations that should be incorporated in the residual functional capacity determination.

None of Phillips' points of error require remand. First, the ALJ complied with the requirements of Ruling 96-7p. Under Ruling 96-7p the ALJ must assess the claimant's credibility by considering factors related to the claimant's daily activities, the frequency and intensity of the claimant's symptoms, and treatment the claimant receives. S.S.R. 96-7p WL

2

374186 at *3.  The Ruling further requires that the ALJ's decision include findings that are "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id*. at *4.

Contrary to Phillips' contentions, the ALJ considered Phillips' testimony and his decision includes a number of references to Phillips' subjective complaints.  (Tr. 17 (tingling and numbness in his extremities, frequent urination, low energy, sensitivity to heat and cold, poor control and hospitalizations for high blood sugar, checks blood sugar three to four times per day)).  In addition, the ALJ noted in part that Phillips testified that he attended church functions that kept him busy and walked two miles every morning to help his circulation. (Tr. 17; *see* Tr. 29 (Phillips testified that his attendance at church functions kept him "pretty busy"); Tr. 36 (Phillips testified that he walked two miles at a track in the mornings)).  The ALJ made clear that he did not give full weight to Phillips' subjective allegations and, considering the ALJ's analysis as well as the record as a whole, his credibility determination is supported by substantial evidence.  *Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994); *see also Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (Courts often look beyond the ALJ's decision, evaluating the record as a whole to determine whether there is evidence, though not cited by the ALJ, that supports his credibility determination.).

Turning to Dr. Gogu's opinions, the treating physician indicated in a residual functional capacity questionnaire that Phillips experienced symptoms including episodic blurred vision; sensitivity to light, heat, or cold; retinopathy; extremity pain and numbness; and depression. (Tr. 425.) Among Dr. Gogu's opinions was that Phillips would be capable of sitting for only two hours and standing/walking for only two hours during an eight-hour workday, that he would be absent from work more than four days per month because of his impairments or treatments, and that he would need to take two unscheduled breaks during the day. (Tr. 427-28.)

The Fifth Circuit Court of Appeals has instructed that when an ALJ determines that a treating source opinion is not entitled to controlling weight, he must evaluate the opinion under the factors set forth in 20 C.F.R. §§ 404.1527(d), 416.927(d). *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). The ALJ must consider: (1) the length of the treating relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) whether the physician provides medical evidence to support his opinion; (5) whether the opinion is consistent with the record as a whole; and (6) the specialization of the treating physician. *Id.* (citing 20 C.F.R.§§ 404.1527(d)). The ALJ in this case acknowledged the length of the treating relationship between Dr. Gogu and Phillips and Dr. Gogu's specialization. (Tr. 15-18.) He acknowledged the nature and extent of the treating relationship noting that Dr. Gogu monitored Phillips's diabetic condition on a monthly basis and treated him for other conditions including back pain and hypoglycemia. (Tr. 15, 18.)

The ALJ considered Dr. Gogu's opinions in the residual functional capacity questionnaire and determined that they were not supported by detailed, clinical, and diagnostic evidence and were not consistent with the objective medical records. (Tr. 18.) The ALJ also noted that Dr. Gogu's notes indicated that Phillips was oriented and that he had normal range of motion and normal deep tendon reflexes. (*Id.*) Although Phillips cites to this statement and argues that the ALJ's reasoning for rejecting Dr. Gogu's opinion is not justified, the limitations indicated in the questionnaire are not entirely related to Phillips' diabetes. (Tr. 426-47.) For example, the inability to sit for more than two hours without a break and the need for jobs that would allow shifting positions at will is not related to diabetes and there is no evidence in the record that Phillips experienced symptoms related to diabetes or another condition that would require such limitations. Further, these limitations and the other limitations are not supported by Dr. Gogu's own examination notes. (*See, e.g.,* Tr. 356-424.)

Finally, although Phillips emphasizes that Dr. Gogu indicated a number of times that his diabetes was uncontrolled, the notations were diagnoses of Phillips' diabetic condition. Diagnoses without more do not require a finding of disability; a claimant is disabled only if his severe impairments prevent him from doing his past work or other work that exists in the national economy. 20 C.F.R. §§ 404.1505(a), 416.905(a) (2005). Diabetes can be controlled with treatment,[1] and the Fifth Circuit Court of Appeals has acknowledged this fact.

---

[1] *See, e.g.,* National Diabetes Education Program, http://ndep.nih.gov/diabetes/diabetes.htm and http://www.ndep.nih.gov/errors/ndep_404.htm(last visited April 6, 2006); MayoClinic.com,

*See Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing *Epps v. Harris*, 624 F.2d 1267, 1270 (5th Cir. 1980)). A diagnosis of uncontrolled diabetes, which indicates that the patient's blood sugar is not within an acceptable range, is caused by noncompliance with treatment, an unregulated diet, or another disease that affects the patient's diabetes. *See* Advance Online Editions for Health Information Professionals, http://health-information. advanceweb.com/ common/Editorial/PrintFriendly.aspx?CC=40946 (last visited April 6, 2006).

There is no evidence that Phillips' diabetes was complicated by another disease. However, there is evidence that Phillips was non-compliant with treatment and that he did not follow a diabetic diet. (Tr. 191-92, 251.) In addition, despite the fact that his diabetes was uncontrolled, Phillips did not suffer from motor dysfunction or organ damage, and contrary to the questionnaire completed by Dr. Gogu, Phillips' ophthalmologist determined that he did not suffer diabetic retinopathy. (Tr. 348.) Further, there is no evidence that Phillips' diabetes caused disabling symptoms. The evidence shows that Phillips did not experience tingling and numbness on a constant basis, experienced only occasional dizziness and lightheadedness, and did not experience nausea, vomiting, fever, or chills. (Tr. 211, 250-51, 368, 373.)

Finally, the court should reject Phillips' argument that the ALJ should have incorporated limitations included in a question his representative posed to the vocational

---

http://www.mayoclinic.com/health/type-2-diabetes/DS0058 (last visited April 6, 2006).

expert. The question was stated as follows:

> Well, if we assume – if we take Dr. Gogu's diabetes RFC, and he indicates that Mr. Phillips, who might be the hypothetical worker, would need to be absent from work more than four days per month. And with frequent breaks, if he would need at least three different occasions to monitor his glucose, and on the same number of occasions to administer insulin, and probably the same number of occasions to take frequent meals. So roughly, you know, six to nine frequent breaks during the day.

(Tr. 43.) The vocational expert testified that such an individual could not perform the jobs he identified. *Id.*

As an initial point, Dr. Gogu indicated in the questionnaire that Phillips would need two unscheduled breaks per day rather than six to nine breaks. (Tr. 427.) And according to Phillips' treatment plan he was ordered to take insulin only in the mornings and evenings; eat or drink only if his blood sugar was low (the records show that he had a problem with high rather than low blood sugar); and check his blood sugar only three times per day. (Tr. 287; *see* Tr. 285, 365, 413, 414 (laboratory results showing high glucose levels.)) Therefore, the evidence does not support the limitations included in the question Phillips' representative posed to the vocational expert, and the ALJ was not required to incorporate them into his residual functional capacity determination. *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985).

The ALJ determined that Phillips could perform sedentary work and that there were jobs that existed in significant numbers in the national economy that he could perform. (Tr. 19-20.) This determination must be upheld by the court if it was reached through the application of correct legal standards and is supported by substantial evidence. *Martinez v.*

7

*Chater*, 64 F.3d 172, 173-74 (5th Cir. 1995).  As the foregoing demonstrates, the decision was reached through the application of correct legal standards.  In addition, there is substantial evidence in the administrative record that Phillips retained the capability of performing sedentary work and the jobs identified by the ALJ. (Tr. 29, 36, 116, 189.)

## II.    Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Phillips' appeal.

## III.   Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court.  A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated:   May 12, 2006.

_____
NANCY M. KOENIG
United States Magistrate Judge

8